UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CANON U.S.A., INC.

                     Plaintiff,

    v.

SYSOREX GOVERNMENT SERVICES, INC.

                    Defendant.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

2:23-cv-8001 (DLI) (LGD)

**LEE G. DUNST**, Magistrate Judge:

      Presently before the Court is Canon U.S.A., Inc.'s ("Canon" or "Plaintiff") motion for default judgment ("Motion") in this action for breach of contract and account stated. *See* Electronic Case File Number ("ECF No.") 11. On January 29, 2024, District Judge Dora L. Irizarry referred the Motion to the undersigned for a Report and Recommendation. As set forth below, the undersigned respectfully recommends that the Court GRANT IN PART and DENY IN PART Plaintiff's Motion and award damages and additional relief as set forth below.

I.    **BACKGROUND**[1]

    A.    **Factual Background**

      Canon is a company incorporated in New York State with its principal place of business in Melville, New York. *See* ECF No. 1 ("Compl.") ¶ 2. Sysorex Government Services, Inc. ("Sysorex" or "Defendant") is a company incorporated in Virginia with its principal place of business in Herndon, Virginia. *See id.* ¶ 3. At issue in this case are two agreements between Plaintiff and Defendant whereby Plaintiff agreed to provide service and replacement part

---

[1] The facts herein are taken from the Complaint (ECF No. 1) and evidence supporting the Motion. As Defendant failed to answer, all well-pleaded allegations in the Complaint are presumed to be true. *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 78 (E.D.N.Y. 2020) (when determining if a plaintiff is entitled to default judgment, the court can only consider the "'non-conclusory, factual allegations' in the complaint" (quoting *Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 287 (E.D.N.Y. 2013))).

coverage for products it sold to Defendant.  *See id.* ¶¶ 12-20.

One agreement required Plaintiff, from October 1, 2022 through September 30, 2023, to provide service and replacement part coverage under its "Platinum Service Plan" for Canon-brand equipment, including full body scanners, intended for use at federal Bureau of Prisons facilities.  *See id.* ¶¶ 12-13; *see also* ECF No. 11-12 ("BOP Agreement").  In exchange, Defendant agreed to pay Plaintiff twelve monthly installments of $105,116.66 (for an annual total of $1,261,400.00).  *See* Compl. ¶¶ 13, 27.[2]  The BOP Agreement required Defendant to pay in advance of each upcoming month and that invoices were due within thirty days of the invoice date.  *See id.* ¶ 14.

Another agreement required Plaintiff, from March 28, 2023 through March 27, 2024, to provide service and replacement part coverage for a single full body scanner intended for use at the sheriff's office at the Fayette County Jail in Ohio.  *See id.* ¶¶ 16-17; *see also* ECF No. 11-13 ("Fayette County Agreement," together with the BOP Agreement, "Agreements").  In exchange, Defendant agreed to pay Plaintiff a single payment of $12,000.00.  *See* Compl. ¶ 17.

The Agreements require that any dispute relating to either agreement would be governed by New York law and that Defendant consented to the jurisdiction and venue of the federal and state courts located in Suffolk County, New York.  *See id.* ¶¶ 4-5.  The Agreements also provide that a late charge of 1.5% per month would be assessed for payments not received by the due date.  *See id.* ¶ 19.  Furthermore, the Agreements require Defendant to pay all costs and expenses incurred by Plaintiff, including reasonable attorney's fees and court costs, in connection with any

---

[2] The Court notes that Plaintiff first states in the Complaint that the BOP Agreement required "12 monthly installments of $105,1<u>66</u>.66" (¶ 13) but at another point states that the BOP Agreement's monthly installments were "$105,1<u>16</u>.66" (¶ 27), which indicates a slight discrepancy of $50.  It is clear from the evidence submitted by Plaintiff that the correct amount of each monthly installment is $105,1<u>16</u>.66.  *See* ECF No. 11-12, BOP Agreement, at 1 ("12 Monthly Installments: $105,116.66"); ECF No. 11-14 ("Invoices to Sysorex") at 2-8.

effort by Plaintiff to collect on payments due.  *See id.* ¶ 20.

Plaintiff fully performed all its obligations under the Agreements.  *See id.* ¶¶ 21-22.
Additionally, under the BOP Agreement, Plaintiff issued monthly invoices to Defendant.  *See id.*
¶ 23.  Defendant made six monthly payments from October 1, 2022 through March 31, 2023, but
stopped making the remaining six monthly payments from April 1, 2023 through September 30,
2023.  *See id.* ¶ 25; *see also* ECF No. 11-11, Declaration of Michael Lane, Senior Director of the
Credit Division at Canon ("Lane Decl.") ¶¶ 7-9; ECF No. 11-14 ("Invoices to Sysorex") at 2-9.
Plaintiff also issued an invoice to Defendant pursuant to the Fayette County Agreement.  *See*
Compl. ¶ 24; *see also* Lane Decl. ¶ 9; ECF No. 11-14, Invoices to Sysorex, at 1.  Under the
Fayette County Agreement, Defendant did not make the single payment of $12,000.00 within
thirty days after receipt of the invoice (which had been issued on March 27, 2023).  *See* Compl.
¶ 26; Lane Decl. ¶ 9.

On August 9, 2023, Plaintiff provided Defendant with a letter noticing Defendant's
breach of the Agreements due to Defendant's failure to make the aforementioned payments.  *See*
Compl. ¶ 27; ECF No. 11-15 ("Termination Letter").  As of the date of that letter, Defendant
owed $525,583.30 for five past-due invoices under the BOP Agreement, an additional
$105,116.66 for the last invoice for September 2023 services under the BOP Agreement, and the
$12,000.00 due under the Fayette County Agreement.  *See* Compl. ¶ 27.  In the letter, Plaintiff
also informed Defendant that the BOP Agreement would be terminated if Defendant did not pay
the full amount by September 29, 2023.  *See id.*  Defendant did not pay by that date and has still
not paid any of these invoices.  *See id.* ¶ 32.

Plaintiff alleges that the following is due from Defendants: (1) $642,699.96 for the seven
aforementioned invoices, (2) $57,410.62 in late charges, (3) $38,053.84 in attorney's fees, (4)

$778.12 in litigation costs, and (5) pre-judgment and post-judgment interest.  *See* Lane Decl. ¶ 11; ECF No. 11-2; Declaration of Anthony P. Badaracco in Support ("Badaracco Decl.") ¶ 11; ECF No. 11-1 ("Pl. Mem.") at 9.  In sum, Plaintiff seeks a grand total of $738,942.54, as well as pre- and post-judgment interest.  *See* Pl. Mem. at 9.

### B.    Procedural Background

On October 26, 2023, Plaintiff filed its Complaint against Defendant alleging breach of contract ("Counts 1-2," *see* Compl. ¶¶ 34-41) and account stated ("Count 3," *see id.* ¶¶ 42-45). *See generally id.*  The Complaint seeks relief in the amount of money owed to Plaintiff under the Agreements, as well as late fees, interest, attorney's fees, and costs.  *See id.*  Defendant was served through personal service upon its President at its headquarters in Herndon, Virginia on October 27, 2023.  *See* ECF No. 7; Pl. Mem. at 4.  On November 21, 2023, Plaintiff requested the Clerk of Court enter a Certificate of Default against Defendant.  *See* ECF No. 8.  The Clerk of Court denied that request because Plaintiff's affidavit did not demonstrate that the pleading was properly served.  *See* November 22, 2023 Order.  On November 22, 2023, Plaintiff filed a revised request with the Clerk of Court seeking a Certificate of Default against Defendant.  *See* ECF No. 9.  Having found evidence of proper service in that revised filing, the Clerk of Court entered a Certificate of Default against Defendant on December 4, 2023.  *See* ECF No. 10.

On January 25, 2024, Plaintiff filed its current motion for default judgment with supporting declarations and evidence.  *See* ECF No. 11.  On January 29, 2024, Judge Irizarry referred the motion to the undersigned for a Report and Recommendation.  *See* January 29, 2024 Order.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 55

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a party

seeking a default judgment.  The Clerk of the Court must first enter a certificate of default, and the court then may enter the default judgment if the complaint sets forth a valid claim and the plaintiff has "established her entitlement to a specific amount of damages."  *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020).  However, a "a plaintiff is not entitled to a default judgment as a matter of right, simply because the defendant is in default."  *Astudillo v. Fusion Juice Bar Inc.*, No. 19-CV-2590, 2023 WL 3802754, at *3 (E.D.N.Y. Mar. 23, 2023). Instead, courts have significant discretion in granting default judgments and consider the following factors: "(1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Song v. Kensington Int'l, Inc.*, No. 21-CV-543, 2024 WL 416494, at *5 (E.D.N.Y. Jan. 29, 2024) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).

### B.    Willfulness

A default is deemed willful if "it is sufficient to conclude that the defendant defaulted deliberately."  *Leger v. Navila Asset Mgmt. Inc.*, No. 20-CV-3820, 2023 WL 2352843, at *2 (E.D.N.Y. Feb. 6, 2023), *report and recommendation adopted*, 2023 WL 2349581 (E.D.N.Y. Mar. 3, 2023) (quoting *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182,187 (2d Cir. 2015)).  In other words, while a finding of bad faith is not necessary, "[w]illfulness requires more than negligence or carelessness."  *Id.*

The Second Circuit has held that failure to respond to a complaint demonstrates willful default, so long as service on the defendant is proper.  *See S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998) (unexplained failure to respond to complaint shows willfulness).  Service is proper if it satisfies Rule 4 of the Federal Rules of Civil Procedure.  *See id.*  Pursuant to Rule

4(h)(1)(A), service may be made on a domestic corporation by following state law for serving a summons in the state where the district court is located.  Under New York law, service on a domestic corporation can be effectuated by delivering a copy of the summons to an "officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."  *See* N.Y. C.P.L.R. § 311(a)(1).

### C.    Meritorious Defenses

A defendant has meritorious defenses against the claims in the complaint if they have presented a defense that is "good at law so as to give the factfinder some determination to make." *Antoine*, 489 F. Supp. 3d at 82.  When a defendant fails to answer the complaint, however, the well-pleaded allegations in the complaint are presumed to be true, and thus, the court is unable to determine whether the defendant has any meritorious defenses.  *See id.*  Therefore, without an answer, "granting a default judgment is favored under those circumstances."  *Pich v. Queens Garden Nursery Inc.*, No. 22-CV-3362, 2024 WL 687234, at *4 (E.D.N.Y. Feb. 20, 2024), *report and recommendation adopted*, No. 22-CV-3362, 2024 WL 967636 (E.D.N.Y. Mar. 6, 2024) (internal quotations omitted).  Nevertheless, even when a defendant has failed to answer the complaint, "a plaintiff must demonstrate that the factual allegations set forth in her complaint state valid claims to relief."  *Antoine*, 489 F. Supp. 3d at 82.

### D.    Prejudice Toward Plaintiff

Denying a motion for default judgment would be prejudicial toward the plaintiff if there would be "no additional steps available to secure relief in this [c]ourt."  *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474, 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022), *report and recommendation adopted*, No. 20-CV-3474, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

### E.      Damages

While a defendant's liability is confirmed by an entry of default, the plaintiff's entitlement to damages is not established automatically.  *See Doe v. Green*, No. 17-CV-1765, 2021 WL 2188534, at *4 (S.D.N.Y. Apr. 29, 2021), *report and recommendation adopted*, 2021 WL 2188148 (S.D.N.Y. May 28, 2021) (explaining that the court must conduct an inquiry in order to ascertain damage); *see also Antoine*, 489 F. Supp. 3d at 90 (explaining that although allegations are deemed true upon a party's default, allegations of damages are not).  The court must be able to ascertain damages with "reasonable certainty."  *Green*, 2021 WL 2188534, at *4. The plaintiff bears the burden of establishing their entitlement to damages and can do so by presenting sufficient evidence to the court in the form of "detailed affidavits or documentary evidence."  *Id.*  In situations where damages are "not susceptible to simple mathematical calculation," the court enjoys discretion in determining the weight it affords the documentary evidence presented by the plaintiff, and in determining whether an evidentiary hearing is necessary.  *See Antoine*, 489 F. Supp. 3d at 91.

## III.   DISCUSSION

### A.      Plaintiff Has Complied With Rule 55

As an initial matter, Plaintiff has complied with the two-step process for seeking a default judgment set forth in Rule 55.  Plaintiff obtained a Certificate of Default from the Clerk of Court on December 4, 2023, which stated that Defendant failed to answer the Complaint.  *See* ECF No. 10.  Plaintiff now seeks a default judgment in the pending motion.

### B.      Defendant Willfully Defaulted

Defendant has failed to respond to the complaint or otherwise appear in this action.  In accordance with Second Circuit precedent, Defendant's failure to respond is evidence of a willful default.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.

1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); *accord Song v. Kensington Int'l, Inc.*, No. 21-CV-543, 2024 WL 416494, at *6 (E.D.N.Y. Jan. 29, 2024) (finding willful default where defendant failed to respond). Still, the court must determine whether service upon Defendant was proper.

Rule 4(h)(1)(A) states that service may be made upon a domestic corporation by following state law for serving summons in the state where the district court is located. Under New York law, service on a corporation can be effectuated by delivering a copy of the summons to an "officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." *See* N.Y. C.P.L.R. § 311(a)(1). Plaintiff's affidavit of service confirms that Defendant was served by delivery of a copy of the Summons and Complaint personally upon Defendant's President, Zaman Khan. *See* ECF No. 7 (describing appearance of Zaman Khan). Therefore, service on Defendant was clearly proper. *See Robert K. Lesser Living Tr., Dated Apr. 21, 2005 v. United Secular Am. Ctr. for the Disabled, Inc.*, 164 A.D.3d 1659, 1660 (N.Y. App. Div. 4th Dep't 2018) (finding that personal service upon the defendant corporation's president constitutes *prima facie* evidence of proper service); *see also Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 271 (N.Y. 1980) ("The summons may, of course, be served on any director or corporate officer, which includes the president . . . ."); *cf. O'Hara v. Cohen-Sanchez*, No. 22-CV-6209, 2023 WL 5979176, at *4 (E.D.N.Y. Aug. 28, 2023) ("Generally, a process server's affidavit of service creates a presumption of proper service."); *Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 715 (E.D.N.Y. 2018) ("Where a person holds him/herself out to be such a person, and the circumstances objectively support a reasonable inference that the defendant would receive fair

notice, the service should be sustained.").[3]  As Defendant was properly served and failed to answer the Complaint, its default is deemed willful.

### C.    Defendant Has Failed to Raise Any Meritorious Defenses and the Complaint States Valid Claims for Relief for Breach of Contract

Because Defendant has not responded to the Complaint, it has not asserted any meritorious defenses to any of the claims.  Therefore, the Court is unable to make any determinations about the merit of any defenses.  *See Antoine*, 489 F. Supp. 3d at 82 (explaining that when a defendant defaults, courts are unable to decide whether a defendant has a meritorious defense to plaintiff's allegations).  Nevertheless, the Court must still assess whether the Complaint states valid claims for relief.[4]  *See id.*

### 1.    Choice of Law

As an initial matter, the Court must determine what law to apply to Plaintiff's claims. Pursuant to both Agreements, the parties agreed that they were "made within the State of New York" and that "any dispute, claim or controversy between the parties arising out of or relating to th[e] Agreement[s] will be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of laws provisions."  *See* Compl. ¶ 4; *see also* ECF No.

---

[3] Plaintiff also mailed its Motion to Defendant at its address in Herndon, Virginia, pursuant to this District's Local Rule 55.2(c).  *See* ECF No. 12 (FedEx receipt of mailing); ECF No. 11-2, Badaracco Decl. ¶¶ 2-3.

[4] The Court confirms that it has personal jurisdiction over Defendant.  Under New York's long-arm statute, courts may exercise personal jurisdiction over a non-domiciliary "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state," (N.Y. C.P.L.R. § 302(a)) but "only where the cause of action arises from the enumerated acts."  *Eco-Fuels LLC v. Sarker*, No. 22-CV-250, 2024 WL 779038, at *4 (E.D.N.Y. Feb. 26, 2024).  Here, Defendant Sysorex, a domiciliary of Virginia, contracted with Plaintiff Canon, a New York State corporation.  The contracts contain a choice-of-law clause providing for New York law to govern the contracts and a forum-selection clause affirming that the parties consent to the jurisdiction of "federal courts . . . located in Suffolk County, New York."  *See* Compl. ¶¶ 2-5.  The causes of action arise from breaches of those same contracts.  *See generally id.*  Therefore, the Court finds that Defendant transacted business within New York and is subject to the Court's personal jurisdiction.  *See Eco-Fuels LLC*, 2024 WL 779038, at *4 (finding personal jurisdiction over Delaware corporation and Connecticut individual where both defendants contracted with a New York corporation and the contract contained choice-of-law and forum-selection clauses).

11-12, BOP Agreement, at 17; ECF No. 11-13, Fayette County Agreement, at 5.  "The validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." *Eco-Fuels LLC v. Sarker*, No. 22-CV-250, 2024 WL 779038, at *6 (E.D.N.Y. Feb. 26, 2024) (quoting *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332 (2d Cir. 2005)).  This Court, sitting in diversity, is "bound to apply New York law to determine the validity" of the choice-of-law clauses in the contracts. *Id.*  "When a choice-of-law provision exists 'and the jurisdiction chosen by the parties has a substantial relationship to the parties or their performance, New York law requires the court to honor the parties' choice insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated.'" *Id.* (quoting *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987)).

Here, Plaintiff is a New York State corporation with its principal place of business in Suffolk County.  *See* Compl. ¶ 2.  Furthermore, there is no evidence that enforcement of the choice-of-law clauses in the Agreements would violate fundamental policies of New York law. Therefore, New York law should apply.  *See Eco-Fuels LLC*, 2024 WL 779038, at *6 (applying New York law where contract contained choice-of-law clause providing that New York substantive law should apply).

### 2.     Breach of Contract (Counts 1 and 2)

Plaintiff alleges that it fulfilled its contractual obligations to Defendant, but that Defendant failed to remit payment for the remaining six monthly payments in the BOP Agreement ($630,699.96) and the single payment in the Fayette County Agreement ($12,000.00), resulting in a breach of contract by Defendant.  *See* Compl. ¶¶ 21-33.

"The elements of a breach of contract claim in New York are '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by

the defendant, and (4) damages.'" *Martino v. MarineMax Ne., LLC*, No. 17-CV-4708, 2018 WL

6199557, at *3 (E.D.N.Y. Nov. 28, 2018) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d

Cir. 1996)).

Here, the elements for breach of contract are certainly met. The parties entered into two

service agreements in which Plaintiff agreed to provide service and replacement part coverage

for its products intended for use by Defendant's customers in exchange for payment by

Defendant. *See* Compl. ¶¶ 12-13, 16-17. Plaintiff performed its contractual obligations under

both Agreements by providing service and replacement part coverage to Defendant's customers.

*See id.* ¶¶ 21-22. Pursuant to the BOP Agreement, Plaintiff issued monthly invoices throughout

the term. *See id.* ¶ 23; ECF No. 11-14, Invoices to Sysorex, at 2-9. Pursuant to the Fayette

County Agreement, Plaintiff also issued an invoice for the single $12,000.00 payment. *See*

Compl. ¶ 24; ECF No. 11-14, Invoices to Sysorex, at 1. Defendant paid the first six monthly

installments under the BOP Agreement but did not pay the remainder. *See* Compl. ¶ 25.

Additionally, Defendant did not pay the one invoice under the Fayette County Agreement. *See*

*id.* ¶ 26; Lane Decl. ¶ 9. Plaintiff alleges damages under the BOP Agreement of $630,699.96,

representing the amount due from the six outstanding monthly invoices, exclusive of late fees.

*See* Compl. ¶ 37. Plaintiff also alleges damages under the Fayette County Agreement of

$12,000.00, representing the amount due from the single invoice, exclusive of late fees. *See id.*

¶ 41. Furthermore, under the terms of the Agreements, Plaintiff claims it is entitled to late fees,

interest, reasonable attorney's fees, and litigation costs. *See id.* ¶¶ 37, 41. Therefore, Plaintiff

has established both breach of contract claims. *See, e.g.*, *MMP Cap., Inc. v. Punyakam, PLLC*,

No. 20-CV-1755, 2022 WL 1750434, at *5 (E.D.N.Y. Apr. 5, 2022), *report and*

*recommendation adopted sub nom. MMP Cap., Inc. v. Punyakam, PPLC*, No. 20-CV-1755, 2022

WL 1749825 (E.D.N.Y. May 31, 2022) (finding valid breach of contract claim in default judgment motion).

For the reasons stated above, the undersigned respectfully recommends that the Court find Defendant liable for breach of contract as to the BOP Agreement (Count 1) and the Fayette County Agreement (Count 2).

### 3.    Account Stated (Count 3)

Plaintiff also alleges that Defendant is indebted to Plaintiff upon an account stated between them and, after Plaintiff demanded Defendant pay the invoices, Defendant failed to remit payment. *See* Compl. ¶¶ 42-45.  Plaintiff's account stated claim fails, however, because it is duplicative of its successful breach of contract claims, especially where Plaintiff seeks the same damages. *See, e.g.*, *Fometal S.R.L. v. Keili Trading LLC*, No. 22-CV-1928, 2024 WL 307976, at *12 (S.D.N.Y. Jan. 26, 2024) (dismissing account stated claim as duplicative of a breach of contract claim particularly where "they arise from the same facts and do not allege distinct damages" (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008))).

Therefore, the undersigned respectfully recommends dismissal of Plaintiff's account stated claim.

### D.    Denial of the Motion Would be Prejudicial to Plaintiff

Finally, if the Court were to deny Plaintiff's Motion, it would be unable to recover for the injuries that it suffered as a result of Defendant's continued abuse.  Therefore, denial of the motion would be prejudicial toward Plaintiff. *See Antoine*, 489 F. Supp. 3d at 90 (holding that it would be prejudicial toward the plaintiff to deny the motion for default judgment because "plaintiff would be unable to recover for the claims adequately set forth in the complaint").

**E.**     **Plaintiff's Damages Calculations**

1.     Principal Amount Due Under the Agreements

Plaintiff provides sufficient evidence to support its damages claim for the principal amount owed under the Agreements.  Plaintiff submitted copies of the six unpaid invoices (April 2023 through September 2023), under the BOP Agreement, of $105,116.66 each.  *See* Compl. ¶ 23; ECF No. 11-14, Invoices to Sysorex, at 2-9.  Thus, the total amount owed under the BOP Agreement is $630,699.96.  *See* Compl. ¶ 37.  Plaintiff also provides the single invoice of $12,000.00 under the Fayette County Agreement.  *See id.* ¶ 41; ECF No. 11-14, Invoices to Sysorex, at 1.  Furthermore, Plaintiff has sufficient evidence to support its allegation that Defendant has failed to pay these outstanding amounts due under the Agreements.  *See* Compl. ¶¶ 37, 41; Lane Decl. ¶ 9; ECF No. 11-15, Termination Letter.  Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $642,699.96 for the principal amount for both breach of contract claims.  *See* Compl. ¶ 33; *see also Keybank Nat'l Ass'n v. Nour Limo, Inc.*, No. 22-CV-1894, 2024 WL 685840, at \*7 (E.D.N.Y. Feb. 20, 2024) (awarding damages for the principal amount owed in a breach of contract claim).

2.     Late Fees Under the Agreements

Plaintiff also seeks late fees for each unpaid invoice.  *See* Pl. Mem. at 7.  The Court finds that Plaintiff provides sufficient evidence and supporting documentation to support its damages claim for these late fees.

The Agreements permit that a 1.5% late charge per month be assessed for delinquent payments.  *See* Compl. ¶ 19; ECF No. 11-12, BOP Agreement, at 15; ECF No. 11-13, Fayette County Agreement, at 4.  In support of its Motion, Plaintiff calculates the late fees owed for the seven unpaid invoices, as of the filing of its Motion, as $57,410.62.  *See* Lane Decl. ¶¶ 10-11

(calculating late fees per month based on date invoice issued through December 2023).

Having reviewed the supporting evidence and these calculations, the undersigned respectfully recommends that Plaintiff be awarded $57,410.62 in late fees, pursuant to the Agreements. *See Plenitude Cap. LLC v. Utica Ventures, LLC*, 592 F. Supp. 3d 82, 89 (E.D.N.Y. 2021) (awarding late fees on unpaid invoices in default judgment).

        3.   <u>Attorney's Fees</u>

In addition to the amount owed under the Agreements, Plaintiff seeks reasonable attorney's fees. *See* Pl. Mem. at 7. In support of its Motion, Plaintiff calculates total attorney's fees of $38,053.84.[5] *See* Pl. Mem. at 7; Badaracco Decl. ¶¶ 10-14.

        a)   Plaintiff's Entitlement to Attorney's Fees

Under New York law, "attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003). "Accordingly, while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create." *Id.* Thus, the "intention" to provide attorneys' fees as damages for a breach of contract should be "'unmistakably clear' from the language of the contract." *Id.* (quoting *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (N.Y. 1989)).

Here, the Agreements between the parties includes the same contractual provision which provides that:

> If payment is delinquent and cannot be collected on demand or during the cure period set forth in the Section entitled "Termination," [Defendant] agrees to pay all costs and expenses incurred by [Plaintiff], including, without limitation, reasonable attorney's fees and court cost, in connection with [Plaintiff]'s efforts to collect any

---

[5] The total amount of attorney's fees sought was discounted 15% from the total amount of fees actually billed to Plaintiff, which was $46,053.00. *See* Badaracco Decl. ¶ 11.

payment due by [Defendant] pursuant to this Agreement.

ECF No. 11-12, BOP Agreement, at 15; ECF No. 11-13, Fayette County Agreement, at 4.  The

Court finds that the language above is "unmistakably clear," entitling Plaintiff to reasonable

attorney's fees in connection with this litigation.  *See Argonaut Ins. Co. v. Manetta Enterprises,*

*Inc.*, No. 19-CV-482, 2021 WL 170832, at *9 (E.D.N.Y. Jan. 19, 2021) (finding language in

contract "unmistakably clear" to allow plaintiff to recover attorney's fees (quoting *Oscar Gruss*

*& Son*, 337 F.3d at 199)).

     b)    Calculation of Reasonable Attorney's Fees

However, even if the contract provides for attorney's fees and does not impose any other

limitations, such an amount of fees still must be reasonable.  *See Nimkoff v. Drabinsky*, No. 17-

CV-4458, 2020 WL 3806146, at *8 (E.D.N.Y. June 9, 2020), *report and recommendation*

*adopted*, No. 17-CV-4458, 2020 WL 3804458 (E.D.N.Y. July 7, 2020) ("[T]he law is clear that

'[i]n awarding attorneys' fees pursuant to a contract, a court must order the losing party to pay

the amount actually incurred by the prevailing party, so long as those amounts are not

unreasonable.'" (quoting *Cty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs.*

*L.P.*, 636 F. Supp. 2d 159, 179 (N.D.N.Y. 2009))).

In determining the reasonableness of a fee award, Courts have "broad discretion."  *Ivic v.*

*Advance Stores Co.*, No. 19-CV-509, 2023 WL 6385706, at *2 (E.D.N.Y. Sept. 29, 2023)

(quoting *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011)).  Courts generally

use "the lodestar method—[taking] the product of a reasonable hourly rate and the reasonable

number of hours required by the case."  *Div. 1181 Amalgamated Transit Union-New York*

*Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 617 (E.D.N.Y. 2017)

(quoting *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).  To determine the

reasonable hourly rate, courts generally use the prevailing rates used in their District.  *See Power*

*Up Lending Grp., LTD. v. Cardinal Energy Grp., Inc.*, No. 16-CV-1545, 2023 WL 7001360, at *4 (E.D.N.Y. Aug. 18, 2023) ("To determine whether an hourly rate is reasonable, 'a district court should generally use the prevailing hourly rates in the district where it sits.'" (quoting *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013))).  Additionally, courts also use factors such as "the labor and skill required, the difficulty of the legal questions, the attorney's customary rate, the amount at stake, and awards in similar cases." *Nimkoff*, 2020 WL 3806146, at *8.  To determine the reasonable number of hours, the party seeking the award "bears the burden to document the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Ivic*, 2023 WL 6385706, at *2 (internal quotations and citations omitted).  Furthermore, it is the plaintiff's burden to demonstrate the reasonableness of the attorney's fees it seeks. *Power Up Lending Grp.*, 2023 WL 7001360, at *4 ("[P]laintiff retains the burden of demonstrating the reasonability of such fees.").

Here, Plaintiff seeks fees for work performed by four attorneys and two paralegals as follows: Richard H. Silberberg, a partner at Dorsey & Whitney ("Dorsey") for $795.00 per hour; Anthony P. Badaracco, a partner at Dorsey for $710.00 per hour; Joshua R. Kornfield, an associate at Dorsey for $705.00 per hour; and two paralegals at Dorsey for $405.00 and $370.00 per hour, respectively. *See* Badaracco Decl. ¶ 10; ECF No. 11-5, Dorsey Invoices to Plaintiff ("Legal Invoices").  Plaintiff also provides the biographies of the attorneys who worked on this matter (ECF No. 11-4), cases outside of the Eastern District of New York where those courts found Dorsey rates were determined to be reasonable (ECF Nos. 11-6-9), and information about counsels' efforts to reduce costs. *See* Badaracco Decl. ¶¶ 15-19.

Having reviewed the hourly rates and the supporting evidence submitted by Plaintiff, the Court finds that the hourly rates are unreasonably high for the District.  Plaintiff submits the Badaracco Declaration to argue that the rates used by Dorsey here are below those normally charged by firms of similar "size, capability, and reputation . . . in the New York City area."  *Id.* ¶ 12.  Relying upon data that Dorsey's Finance Department compiled, Plaintiff contends that the rates used for commercial litigation partners with similar experience in comparable firms are higher than what Dorsey used here.  *See id.* ¶ 13.  However, there is no evidence or data presented that demonstrates that the rates used by Dorsey are reasonable rates for relatively straightforward breach of contract cases, such as the case here, in the Eastern District of New York.  *See Nimkoff*, 2020 WL 3806146, at *9 (finding that the rates were too high considering that the case "was neither legally complex nor especially hard fought" where "the defaulting defendant, never appeared to defend himself"); *Nat'l Env't Safety Co., Inc. v. Katz*, No. 18-CV-2161, 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) (finding rates in breach of contract case unreasonably high).  Furthermore, the Court notes that the cases cited by Plaintiff for the proposition that Dorsey charges reasonable rates are not dispositive here as none of the cases are from New York, let alone the Eastern District.  *See Power Up Lending Grp.*, 2023 WL 7001360, at *4 ("To determine whether an hourly rate is reasonable, 'a district court should generally use the prevailing hourly rates in the district where it sits.'" (quoting *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013))).

Notwithstanding the attorneys' wealth of experience in commercial litigation here, the Court concludes that the rates charged by Dorsey are too high for this straightforward and uncomplicated breach of contract case involving failure to pay invoices for services rendered.  *See, e.g.*, *Power Up Lending Grp.*, 2023 WL 7001360, at *4 (approving hourly rate of $400 per

17

hour for attorney with over thirty years of experience); *Ivic*, 2023 WL 6385706, at *2 (approving

hourly rate of $225 per hour for attorney-partner); *Nimkoff*, 2020 WL 3806146, at *9 (finding

that an hourly rate of $520 per hour unreasonable and approving a $300 per hour rate instead).

Therefore, the Court finds that a range of $400.00 to $450.00 per hour for partners, $300.00 per

hour for associates, and $100.00 per hour for paralegals are more reasonable hourly rates that

should apply here. *See, e.g.*, *Hong v. JT Home Mgmt. LLC*, No. 18-MC-2612, 2023 WL

6609303, at *2 (E.D.N.Y. Sept. 20, 2023), *report and recommendation adopted*, No. 18-MC-

2612, 2023 WL 6586408 (E.D.N.Y. Oct. 10, 2023) (applying hourly rate of $400 for partner with

over twenty years of experience); *Interpool, Inc. v. JJS Transp. & Distrib. Co.*, No. 22-CV-1103,

2022 WL 17335670, at *4 (E.D.N.Y. Nov. 30, 2022) (applying an hourly rate of $450 for partner

with thirty years' experience in a "routine breach of contract matter"); *Nat'l Env't Safety Co.*,

2019 WL 1994049, at *2 (applying similar rates in breach of contract action).

Regarding the hours worked, Plaintiff seeks fees based on Mr. Silberberg's 12.30 hours,

Mr. Badaracco's 16.20 hours, Mr. Kornfield's 32.90 hours, and the two paralegals' 4.0 hours.

*See* Badaracco Decl. ¶ 10.  In sum, Dorsey billed 65.40 hours to this case, from August 24, 2023

through December 27, 2023.  *See id.*; ECF No. 11-5, Legal Invoices.

Having reviewed the records, the Court respectfully recommends a slight overall

reduction in these total hours for the reasons stated below.  For example, the billing of over thirty

hours devoted to preparing, drafting, and filing the Complaint, which is eight pages and asserts

three straightforward claims, and, more than fifteen hours spent drafting the memorandum of law

and declarations for the default motion, are somewhat high.  *See* ECF No. 11-5, Legal Invoices,

at 1-9; *No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, No. 21-CV-4755, 2022 WL

18399477, at *15 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, No. 21-CV-

4755, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023) (finding 36.20 total hours, from drafting the complaint through drafting a default motion, to be reasonable); *Dominic Schindler Holding, AG v. Moore*, No. 20-CV-4407, 2022 WL 987428, at *9 (E.D.N.Y. Jan. 12, 2022) (finding "over 23 hours devoted to drafting and filing a five-page, single claim complaint in a 'straightforward' action'" excessive).  Additionally, the records contain block-billing, which "makes it difficult if not impossible for [the Court] to determine the reasonableness of the time spent on each of the individual services or tasks provided."  *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, No. 20-CV-1281, 2022 WL 3703955, at *22 (E.D.N.Y. Aug. 26, 2022), *report and recommendation adopted*, No. 20-CV-1281, 2022 WL 4813505 (E.D.N.Y. Oct. 3, 2022) (quoting *Marshall v. Deutsche Post DHL*, No. 13-CV-1471, 2015 WL 5560541, at *12 (E.D.N.Y. Sept. 21, 2015)). Therefore, the Court respectfully recommends applying a 15 percent overall reduction in the hours sought by Plaintiff (rounded to the nearest tenth).  *See, e.g.*, *Bozdogan v. 23 Ludlam Fuel, Inc.*, No. 16-CV-1053, 2022 WL 17987044, at *5 (E.D.N.Y. Dec. 29, 2022) (applying 15 percent overall reduction to counsel's compensable hours because of block-billing and other deficiencies); *Ally Fin. Inc.*, 2022 WL 3703955, at *22 (same).

Applying the aforementioned reduced hourly rates and reduction in the hours billed, the Court respectfully recommends an award of attorney's fees in the total amount of $18,985.00, broken down as follows:

| Timekeeper | Hours | Hourly Rate | Total Amount |
|---|---|---|---|
| Richard H. Silberberg (Partner) | 10.50 | $450.00 | $4,725.00 |
| Anthony P. Badaracco (Partner) | 13.80 | $400.00 | $5,520.00 |
| Joshua R. Kornfield (Associate) | 28.00 | $300.00 | $8,400.00 |
| Rebecca Glover (Paralegal) | 2.40 | $100.00 | $240.00 |
| Jessica Segal (Paralegal) | 1.00 | $100.00 | $100.00 |
| ███████████ | | | $18,985.00 |

4.    Litigation Costs

Plaintiff also seeks to recover its litigation costs for pursuing this action.  Plaintiff claims that these costs include, the filing fee of $402.00 and the fee for the service of process of $376.12.  *See* Pl. Mem. at 7; Badaracco Decl. ¶ 14.

Federal Rule of Civil Procedure 54(d) provides an award of costs to the prevailing party. Filing fees and costs for service are appropriately reimbursable as litigation costs.  *See Master Grp. Glob. Co., Ltd. v. Toner.Com Inc.*, No. 19-CV-6648, 2020 WL 5260581, at *15 (E.D.N.Y. Aug. 10, 2020), *report and recommendation adopted*, No. 19-CV-6648, 2020 WL 5259057 (E.D.N.Y. Sept. 3, 2020) (awarding costs related to the filing fee and for service of process). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested."  *Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229, 2020 WL 1666460, at *9 (E.D.N.Y. Apr. 2, 2020).  "Filing fees are recoverable without supporting documentation if verified by the docket."  *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 219 (E.D.N.Y. 2019). Process server fees, however, must be supported by documentation.  *Id.*

Plaintiff's $402.00 filing fee is verified by the docket.  *See* Dkt. 1.  The only

documentation evidencing the fee for the service of process of $376.12, however, is a client invoice.  *See* ECF No. 11-5, Legal Invoices, at 22.  The client invoice, alone, is inadequate to support an award for the cost of service of process.  *See, e.g.*, *Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp.*, No. 23-CV-1484, 2023 WL 4867457, at *4 (E.D.N.Y. July 31, 2023) ("Plaintiff's request for process server fees, however, lacks documentary proof outside of the client invoice submitted by Plaintiff's counsel."); *John v. Demaio*, No. 15-CV-6094, 2016 WL 7469862, at *12 (E.D.N.Y. Sept. 29, 2016) ("[T]he Court cannot simply take the ledger that plaintiffs' counsel created at face value without any additional evidence of the costs alleged therein."), *report and recommendation adopted*, No. 15-CV-6094, 2016 WL 7410656 (E.D.N.Y. Dec. 22, 2016).  Therefore, the Court respectfully recommends that Plaintiff be awarded litigation costs of only $402.00 for the filing fee but not for the fee for service of process.

        5.    <u>Interest</u>

Plaintiff also seeks to recover pre-judgment interest calculated from the date the final invoice was past due.  *See* Pl. Mem. at 8.  This date was September 30, 2023.  *Id.*

Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . computed from the earliest ascertainable date the cause of action existed."  N.Y. C.P.L.R. § 5001(a)-(b).  For a breach of contract case, Courts award pre-judgment interest from the date of the contract breach.  *See Cont'l Cas. Co. v. Contest Promotions NY, LLC*, No. 15-CV-501, 2016 WL 1255726, at *7 (E.D.N.Y. Mar. 28, 2016).  The statutory rate is nine percent per year.  N.Y. C.P.L.R. § 5004.

Plaintiff seeks pre-judgment interest since September 30, 2023, which is the date when the final invoice at issue here was past due.  *See* Pl. Mem. at 8.  The statutory interest rate of nine percent results in a daily interest rate of $172.63 ($700,110.58 in damages—principal amount plus late charges—times .09 in interest divided by 365 days in a year).  *See id.*

In addition to pre-judgment interest, Plaintiff seeks post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a), that may accrue between the date of judgment and the satisfaction of the judgment. *See id.* at 9. "[A] plaintiff is 'entitled to post-judgment interest on all civil money awards as a matter of right in federal court.'" *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015, 2024 WL 924534, at *14 (E.D.N.Y. Mar. 4, 2024) (quoting *Brito v. Marina's Bakery Corp.*, No. 19-CV-828, 2022 WL 875099, at *27 (E.D.N.Y. Mar. 24, 2022)).

Therefore, the Court respectfully recommends that Plaintiff be granted pre-judgment interest at a daily rate of $172.63 from September 30, 2023 to the entry of judgment and post-judgment interest to be calculated from the date of entry of judgment until the date of payment, at the rate set forth in 28 U.S.C. § 1961. *See Arch Specialty Ins. Co. v. All Island Bldg. & Restoration Inc.*, No. 19-CV-2396, 2020 WL 6321964, at *5 (E.D.N.Y. May 2, 2020), *report and recommendation adopted*, No. 19-CV-2396, 2020 WL 4783357 (E.D.N.Y. Aug. 18, 2020) (awarding pre-judgment and post-judgment interest in breach of contract case).

## IV.     CONCLUSION

For the reasons set forth above, the Court respectfully recommends granting Plaintiff's motion for default judgment on its breach of contract claims and dismissal of its account stated claim. The Court also recommends that Plaintiff be awarded the total following damages: (i) $700,110.58 for its two breach of contract claims (principal amount of $642,699.96 and late charges of $57,410.62); (ii) $18,985.00 in attorney's fees; (iii) $402.00 in litigation costs; (iv) $172.63 per day in pre-judgment interest from September 30, 2023 until the date entry of judgment; and (v) post-judgment interest pursuant to 28 U.S.C. § 1961.

## V.     OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Irizarry. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995). Furthermore, Plaintiff is directed to serve this Report and Recommendation on Defendant and file proof of service on the docket.

**SO ORDERED:**

Dated:      Central Islip, New York
            May  1, 2024

            s/ Lee G. Dunst
            _____
            **LEE G. DUNST**
            United States Magistrate Judge

23